### AUGUSTA GOODHUE v. WESTERN UNION TELEGRAPH COMPANY.

Decided October 27, 1909.

**1.—Delay in Delivering Telegram—Prolongation of Anxiety.**

An exception was properly sustained to a petition in a suit against a telegraph company for damages arising from delay in delivering a message when it appeared from the allegations of the petition that the anxiety and mental anguish suffered by the plaintiff was not caused by but merely prolonged by, the negligence of the defendant.

**2.—Jurisdiction—Amount in Controversy.**

When, by sustaining an exception to a count in a petition, the amount in controversy is reduced below the jurisdiction of the court in which the case is pending, and the objection is not cured by amendment, the suit is properly dismissed.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Ed. Haltom,* for appellant.—When distress and mental anguish are suffered by one person and the suffering is directly and proximately caused by the carelessness or negligence of another in failing to perform a contract duty, the party injured is by law entitled to recover of the party causing the suffering compensatory damages. Western U. Tel. Co. v. Stephens, 21 S. W., 148; Loper v. Western U. Tel. Co., 70 Texas, 691; Western U. Tel. Co. v. Gossett, 38 S. W., 536; Western U. Tel. Co. v. Nations, 18 S. W., 710.

*F. J.* and *R. C. Duff,* for appellee.—The petition showing on its face that had the message been promptly delivered (instantly) it would have been impossible for the plaintiff to have been present at the time of her father's death, and it further appearing that she was present at his funeral, the court properly sustained the exception to so much of the petition as sought a recovery "for anxiety, distress and mental anguish on account fearing she would not be able to take the first train passing through Calverton," and "on the long journey from Cincinnati to New Orleans she continuously suffered great anxiety, distress and mental anguish in her desire to reach her father at the earliest time, and that after learning at

New Orleans of her father's death, she was alone in her grief," etc., because said suffering and anxiety were merely the prolonged suffering caused by a knowledge of the facts, 'and not such damage or injury as was or could have been contemplated by the parties, and are too remote. Rowell v. Western U. Tel. Co., 75 Texas, 26; Western U. Tel. Co. v. Reed, 84 S. W., 296; Western U. Tel. Co. v. Giffin, 93 Texas, 530; Western U. Tel. Co. v. Edmondson, 91 Texas, 206; Western U. Tel. Co. v. Bass, 28 Texas Civ. App., 418.

FLY, ASSOCIATE JUSTICE.—Appellant instituted this suit to recover damages alleged to have accrued by the failure of appellee to promptly deliver a message informing her of the illness of her father. The material parts of the petition are as follows:

"And now for cause of action, plaintiff avers that on and for a short time before August 23, 1906, she was on a visit to the family of Mr. and Mrs. George Smith, in Warrenton, Virginia, and on the 23d day of August, 1906, John B. Goodhue, the father of plaintiff, was seriously ill in Beaumont, Jefferson County, Texas, and on said 23d day of August at or about 12 o'clock midday, Mrs. Josie Goodhue, the mother of plaintiff, caused to be delivered to defendant at its office in Beaumont, Texas, a message to be sent to plaintiff at Warrenton, Va., notifying plaintiff to come home to Beaumont by first train; said message being in substance as follows: "Miss Augusta Goodhue, care Mrs. Geo. Smith, Warrenton, Va. Come home on first train; Papa ill. (Signed) Mama." And that the charges of defendant for transmission and delivery of said message were paid.

"And now plaintiff avers that within about one-half hour after said message was accepted for transmission and delivery by defendant at Beaumont, plaintiff's said mother caused the defendant at 'its office in Beaumont to be notified that the prompt and immediate transmission and delivery of said message was important, and then requested the agent or employe of said defendant to have said message hurried through to Warrenton, Va., so that plaintiff might receive the same as early as possible, and defendant's agent or employe was told that if there were any additional charge for hurrying said message through that such charges would be immediately paid; and so they would have been paid; and then the agent or employe replied in substance that the message had been sent, and would be hurried through to delivery without extra charge; and plaintiff further avers that said message upon its face, and by its wording, shows that it was important to plaintiff that she receive the same as early as possible, so that she could have an opportunity of taking the first possible railway train from Warrenton, Va., on her journey back home to Beaumont, Texas. That defendant's agents and employes at Beaumont knew that he was seriously ill, and knew that said message was sent to plaintiff by plaintiff's mother.

"And now plaintiff represents that through the gross negligence and carelessness of the defendant, its agents and servants, said message was not transmitted to Warrenton, Va., and delivered to plaintiff until after the expiration of nearly six hours after it had

been received by defendant at Beaumont, Texas, for transmission, so that the same was not delivered to plaintiff until about the hour of five o'clock and fifty-five minutes on the evening of August 23, 1906.

"That at the time said message was delivered the banks and business houses in Warrenton had closed for the day, and plaintiff did not have sufficient funds to pay her passage back to Beaumont, and by reason of the banks and business houses being closed, plaintiff could not get a draft on Beaumont cashed to raise the necessary funds which she could and would have done had said message been delivered even one hour earlier; that her host, Mr. Geo. Smith, did not have in his house sufficient money to pay plaintiff's passage back to Beaumont, but almost immediately after said message was delivered, Mr. Geo. Smith went out among his friends, and borrowing a little from first one and then another, he succeeded in getting for plaintiff sufficient funds to have paid her passage to Beaumont, Texas, but before he could get the money together the last train out of Warrenton, Va., that day had left, which train left Warrenton, at about 7.05 p. m. on the evening of August 23, 1906, and there would be no other train leaving Warrenton, which plaintiff could take on her journey home, until 6.15 p. m. next day, August 24, 1906.

"That being very anxious to get home as soon as possible, plaintiff went on the night of August 23, 1906, by wagon to Calverton, Va., a distance of about nine miles, with the intention of there taking a train to New Orleans, on her way home; that the plaintiff expended for team and driver from Warrenton to Calverton the sum of ten dollars, which was a reasonable charge, and which it became necessary for plaintiff to pay, in order to reach her destination at the earliest possible time; that Calverton is a small town on the Southern Railway through which a train passed en route to New Orleans at about 12.30 a. m., but which did not usually stop for passengers at that station.

"That plaintiff, or friends for her, sent a telegraph message to the officials of said railway at Washington, D. C., requesting that the train stop at Calverton for plaintiff, but by reason of the fact that the message to plaintiff from Beaumont was not delivered to plaintiff until nearly six p. m., the message to said railway officials could not be delivered at the offices of said officials in Washington until after office hours, and said message was not received by said railway officials until it was too late for them to grant said request made by plaintiff, and although plaintiff reached Calverton in time to take said train it passed through without stopping; that if plaintiff had succeeded in her effort to take said train she would have reached Beaumont about twenty-four hours earlier than she did. Not being able to take the said train, she waited at Calverton until the hour of 1.30 a. m., August 24, 1906, when she took a train which carried her to Cincinnati, Ohio. That this was, under the circumstances, the best and quickest way for plaintiff to reach her home in Beaumont, or at least it so appeared to plaintiff. At Cincinnati, Ohio, plaintiff took the first train she could for New Orleans, La.,

which place it was expected plaintiff would reach in time to take a train from New Orleans to Beaumont, at about 9 p. m. August 25, 1906. But the train upon which plaintiff was going from Cincinnati to New Orleans was late or behind time, and plaintiff did not reach New Orleans until about 11 o'clock August 25, 1906, after the train from New Orleans to Beaumont had departed. That upon arriving at New Orleans plaintiff was met by friends, who informed her that her father, John B. Goodhue, had died August 24, 1906, and that he would be buried on the evening of August 26, 1906. That there would be no train going from New Orleans to Beaumont until about 9.30 o'clock on the morning of August 26, 1906, and which would not reach Beaumont until 6.30 or 9.30 o'clock August 26, after the burial of the body of plaintiff's father.

"That in order to arrive at Beaumont before the funeral of her father it was necessary for plaintiff to hire a special train to carry her from New Orleans to LaFayette, La.; and further, it became necessary for plaintiff to again borrow money to pay for said special train, and she did borrow money, and did hire and pay for such special train the sum of one hundred and eighty-five dollars. Plaintiff was compelled to wait in New Orleans until 2 o'clock a. m. August 26 before said special train was made up and ready to depart. And at which hour and day said train left New Orleans and arrived at LaFayette, La., at about the hour of 7 o'clock a. m. August 26, at which place plaintiff took a train, which arrived in Beaumont, Texas, at about 2 o'clock p. m. August 26, 1906, about two hours before the burial of the body of plaintiff's father.

"And now plaintiff avers that in the journey from Warrenton to Calverton by wagon she was compelled to travel over a rough and muddy road in the dark, and although accompanied by friends who did all in their power to render plaintiff comfortable on said journey, she suffered and endured great physical pain from being jolted and shaken by the wagon rolling over the rough and muddy road, and great anxiety, distress and mental anguish, account fearing she would not be able to take the first train passing through Calverton; and that by reason of having to make the long journey from Cincinnati to New Orleans on a train behind time, she continuously on said journey suffered great anxiety, distress and mental anguish in her desire to reach her father at the earliest possible time. And at New Orleans, where plaintiff first learned of her father's death, she suffered great mental anguish and distress in contemplating the long ride from New Orleans to Lafayette alone in a special train, and on said journey from New Orleans to Lafayette she suffered great distress and mental anguish from being alone in her great distress and grief, and from the fact that she was separated from her mother and other loved ones in their sorrow. All of which physical pain and mental anguish was directly and proximately caused by the gross negligence and carelessness of the defendant in failing to use ordinary care and diligence in transmitting and delivering said message.

"And plaintiff further shows that she was required to pay and did pay for said special train the sum of about one hundred and

eighty-five dollars, which sum of money she would not have had to pay had it not been for the gross negligence and carelessness of defendant in failing to use ordinary care and diligence in transmitting and delivering said message; and defendant is liable for said money.

"That plaintiff paid for the wagon and driver to carry her from Warrenton to Calverton the sum of ten dollars, which she would not have had to pay had it not been for the negligent failure of defendant to use reasonable care and diligence in transmitting and delivering said message.

"And plaintiff further says that she was not in any way guilty of contributory negligence which in any way contributed to her injuries or mental anguish or damages.

"And the defendant, its agents and servants had notice by the wording of said message that plaintiff was notified of her father's serious illness, and that it was urgent and necessary for plaintiff to take the first train possible in order to reach her father's bedside at the earliest possible moment; and they knew that if said message was not delivered with reasonable dispatch and promptness that plaintiff would be put to extra expense and also delay in reaching her home to be with her relatives in their distress. And the defendant knew or ought to have known that plaintiff would expend any money necessary to be expended in her attempt to reach Beaumont at the earliest possible time.

"Plaintiff further avers that had it not been for the gross negligence and carelessness of defendant in failing to use ordinary care and diligence in the transmission and delivery of said message, the plaintiff could and would have taken a train at Warrenton, Va., at about 5.55 p. m. or 7.05 p. m. on August 23, 1906, and would have arrived at Charlottesville, Va., at about 8 o'clock p. m., where she would have taken a train direct to New Orleans, La., and would have arrived at New Orleans at about 9 a. m. on August 24, and would have reached Beaumont at about 9 p. m. on the same day.

"That had defendant used ordinary care and diligence in transmitting and delivering said message plaintiff would have received the same at or before 2 o'clock p. m. on August 22, 1906, and could and would have obtained the necessary money for her journey in time to have left Warrenton, Va., at 7.05 on that day and could and would have arrived in Beaumont on August 24, 1906, at 9 o'clock p. m."

The sum of $1800 was alleged to have arisen for mental anguish and $195 on account of ten dollars paid for conveyance from Warrenton to Calverton and $185 for a special train from New Orleans to Lafayette, Louisiana.

The court sustained special exception to those parts of the petition that set up damages that were alleged to have arisen from the distress and mental anguish which arose from appellee's great desire to reach her father at the earliest possible moment and from the fact of her separation from her mother and loved ones and was alone in her distress and grief.

If the message had been delivered with such promptness that ap-

pellant would have left by the first train out of Warrenton, she would have been just as lonely and would have suffered the same mental anguish and grief on account of her desire "to reach her father at the earliest possible time" and "having to make the long journey from Cincinnati to New Orleans" as she did after being delayed. The delay of the message did not produce the anxiety of mind arising from those causes, but merely prolonged it. The Supreme Court has held that prolongation of anxiety caused by failure to promptly deliver a message can not be made the basis of damages. Rowell v. Western U. Tel. Co., 75 Texas, 26; Western U. Tel. Co. v. Edmondson, 91 Texas, 206; Western U. Tel. Co. v. Giffin, 93 Texas, 530. The delay of the message did not add a mile to the length of the journey from Cincinnati to New Orleans and did not increase the desire on the part of appellant to reach her father at the earliest possible time, and was not the proximate cause of any anxiety resulting "from the fact that she was separated from her mother and other loved ones in their sorrow."

The court held that the damages set forth as arising from mental anguish could not be recovered, but granted leave to appellant to amend so as to meet the rulings, but this was declined and notice of appeal given. The court granted permission to appellant to amend her petition so as to bring the matter in dispute within the jurisdiction, but this was declined and the amount in controversy that remained after the exceptions had been sustained not being sufficient to give the court jurisdiction, the case was properly dismissed. (Haddock v. Taylor, 74 Texas, 216; McFadin v. City of San Antonio, 22 Texas Civ. App., 140.) The judgment is affirmed.

*Affirmed.*